IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FRANKLIN SALVADOR, SR. | ) | |
| and | ) | |
| FRANKLIN SALVADOR, JR., | ) | |
| Plaintiffs | ) | |
| vs. | ) | Civil Action No. _____ |
| ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY<br>2775 Sanders Road<br>Northbrook, Illinois  60062 | ) | |
| ALLSTATE INSURANCE COMPANY<br>2775 Sanders Road<br>Northbrook, Illinois  60062 | ) | |
| and | ) | |
| ALLSTATE INDEMNITY COMPANY<br>2775 Sanders Road<br>Northbrook, Illinois  60062 | ) | |
| Defendants. | ) | |

## NOTICE OF REMOVAL

Defendants, Allstate Property and Casualty Insurance Company, Allstate Insurance Company and Allstate Indemnity Company ("Defendants"), remove to this Court the state court action described below.  Removal is proper under 28 U.S.C. § 1332(a), because Plaintiffs' individual claimed damages exceed the $75,000 jurisdictional minimum under that provision and there is complete diversity of citizenship.  Removal is also proper under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), 28 U.S.C. § 1441 (a) and (b), and 28 U.S.C.

§ 1453, because this is a putative class action with more than 100 putative class members that are seeking to recover more than $5,000,000, and there is at least minimal diversity of citizenship.

## NATURE OF THE CASE

1. On August 13, 2019, Plaintiffs Franklin Salvador Sr. and Franklin Salvador Jr. ("Salvador Jr.") (collectively, "Plaintiffs") commenced an action against Defendants on behalf of themselves and a putative class in the Superior Court of the District of Columbia, entitled *Salvador v. State Auto Group, et al.,* Case No. 003938. Service was first effectuated on Defendants on August 21, 2019.

2. In compliance with 28 U.S.C. § 1446(b), this Notice of Removal is therefore filed within thirty (30) days after service of the Complaint upon Defendants, thus rendering this removal timely.

3. Plaintiffs' underlying state court action asserts two causes of action related to Defendants' alleged failure to pay Plaintiffs and the putative class the full amount of uninsured and underinsured motorist ("UM") coverage allegedly due under automobile insurance policies issued by Defendants. (Compl., ¶¶ 22-33.) According to Plaintiffs, at the time Salvador Jr. was injured in an accident with an underinsured driver, they had an automobile insurance policy issued by Defendants with UM coverage in the amount of $25,000. (*Id.,* ¶¶ 15-21.) Plaintiffs allege that Defendants have improperly failed to compensate Salvador Jr. and the putative class members for the full amount of UM coverage allegedly due under their policies for injuries sustained in motor vehicle accidents with at fault drivers. (*Id.,* ¶¶ 5-8.) According to Plaintiffs, Defendants have "denied the full benefits, and intentionally, maliciously, and wantonly refused to promptly and fairly provide uninsured motorists benefits to Plaintiffs[.]" (*Id.,* ¶ 7.)

4. In Count I, the compensatory damages Count, Plaintiffs allege Defendants "failed and refused to reasonably compensate plaintiff for his serious and multiple injuries and damages." (*Id.,* ¶ 21.)

5. Plaintiffs allege their individual compensatory damages are "TWENTY FIVE THOUSAND ($25,000) DOLLARS," and they also demand damages in this compensatory Count for the class in an amount "expected to exceed FOUR MILLION DOLLARS ($4,000,000.00)[.]" (*Id.,* p. 6, "WHEREFORE" clause).

6. In Count II, Plaintiffs allege Defendants have engaged in "misleading advertising campaigns" designed to encourage plaintiffs and others to purchase UM coverage knowing they would unfairly discourage or delay prompt resolution of the claims. (Compl., ¶ 26.) Plaintiffs also allege Defendants failed to advise Plaintiffs and the putative class, *inter alia,* that: (a) their claims would be submitted to a computer system known as "Colossus," which would result in underpayment of claims; (b) Defendants extend low offers and would require Plaintiffs and putative class members to engage in litigation of their claims; and (c) Defendants would fail to engage in meaningful alternative dispute resolution. (Compl., ¶¶ 27-32.)

7. Plaintiffs assert claims only in this Count for extra-contractual damages, which include treble damages, punitive damages and attorneys' fees. (Compl., p. 9.)

8. Plaintiffs purport to represent a class defined as: "All District of Columbia Allstate policyholders or their beneficiaries who: (1) since August 13, 2016; (2) made a claim for uninsured motorist benefits with Allstate which was not paid in full; and (3) that included a claim for bodily injury." (Compl., ¶ 9.)

3

## THIS COURT HAS JURISDICTION UNDER TRADITIONAL DIVERSITY

9. This Court has jurisdiction under traditional diversity principles pursuant to 28 U.S.C. §§ 1332 and 1367 because Plaintiff and Defendants are diverse and the amount in controversy requirement is satisfied.

**Plaintiff And Defendants Are Diverse**

10. Plaintiffs are citizens and residents of the District of Columbia. (Compl., p. 1.)

11. Defendants are all corporations incorporated under the laws of Illinois with their principal places of business in Illinois, and are, therefore, citizens of Illinois for purposes of the diversity of citizenship analysis. (*See* Compl., ¶ 33. *See also* Service Cover Sheet to Complaint.)

12. Accordingly, there is complete diversity of citizenship between the parties pursuant to 28 U.S.C. § 1332.

**The Amount In Controversy Requirement Is Satisfied**

13. The requisite $75,000 amount in controversy for an individual plaintiff is satisfied here under 28 U.S.C. § 1332(a), and therefore this Court has supplemental jurisdiction over the entire putative class under 28 U.S.C. § 1367. *See Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 549 (2005) (where one of the named plaintiffs in the alleged class action satisfies the amount-in-controversy requirement, 28 U.S.C. § 1367 authorizes supplemental jurisdiction over the claims of the other plaintiffs); *Abend v. Samuel C. Boyd, Inc.*, No. CIV.A.10-480(RMC), 2010 WL 1993828, at *2 (D.D.C. May 19, 2010) (same principle).

14. Although the Complaint does not contain a demand for a specific dollar amount of damages, it is clear that the individual amount in controversy far exceeds $75,000. Where a complaint "seeks an unspecified amount of damages, the defendant must, to justify removal to federal court, establish the amount in controversy by a preponderance of the evidence….

4

Although the burden of proof may be with the defendant, this does not necessarily mean that it must always provide an item-by-item accounting of the claims. Instead, courts may consider the evidence provided to them and exercise some degree of common sense in order to independently determine whether the amount in controversy has been met." *Parker-Williams v. Charles Tini & Assocs., Inc.*, 53 F. Supp. 3d 149, 152 (D.D.C. 2014). The amount in controversy is assessed based on what the plaintiff potentially could recover, not what the plaintiff will actually recover. *See, e.g., Parker-Williams,* 53 F. Supp. 3d at 153, 154 ("While trying to estimate the precise amount of punitive damages would be inherently speculative, *their potential applicability* pushes the Court further towards the conclusion that the amount in controversy exceeds $75,000…. Given *the potential value* of the compensatory damages asserted by Plaintiff and *the possible addition* of punitive damages and attorney fees, it seems more likely than not that the amount in controversy has passed the $75,000 threshold.") (emphasis added). *See also Pesticides v. Dr. Pepper Snapple Grp., Inc.,* 322 F. Supp. 3d 119, 121 (D.D.C. 2018) (finding $75,000 amount in controversy requirement met; noting "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.") (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens,* 135 S. Ct. 547, 550 (2014)).

15.  Here, Plaintiffs allege they are entitled to actual damages in the amount of $25,000. (Compl., p. 6, WHEREFORE Clause.) Plaintiffs also seek punitive damages, treble damages and attorneys' fees. (*Id.,* Count II.)

16.  For jurisdictional purposes, the amount in controversy includes punitive and treble damages, as well as compensatory damages. *See e.g., Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 240 (1943) ("both actual and punitive damages… must be considered to the extent claimed in determining jurisdictional amount"); *Hartigh v. Latin*, 485 F.2d 1068, 1071-72

(D.C. Cir. 1973) ("It is clear that punitive damages should be considered in determining the jurisdictional amount in controversy.").

17. For example, in *Parker-Williams*, 53 F. Supp. 3d at 153, this Court explained "[e]ven if the compensatory damages were to fall short of the $75,000 threshold, punitive damages could easily make up the difference. A court must consider claims for punitive damages when determining a jurisdictional amount, as long as those damages have at least a colorable basis in law and fact." *Id.* (internal quotation omitted, citing *Kahal v. J. W. Wilson & Assocs., Inc.*, 673 F.2d 547, 549 (D.C. Cir. 1982)). There, the Court found such a basis present where, as here, the plaintiff alleged the defendant acted with "evil motive or actual malice." *Id.*

18. Courts have awarded punitive damages, or assessed the amount in controversy based on punitive damages, in various ratios. For example, the court, in *Modern Mgmt. Co. v. Wilson*, 997 A.2d 37, 58 (D.C. Ct. App. 2010), noted that courts have awarded punitive damages in a "wide range of ratios," citing various federal cases in which ratios ranging from 19:1 to 6.5:1 were applied. *Id.* (citations omitted).

19. In *Thomas v. Nat'l Legal Prof'l Assocs.*, 594 F. Supp. 2d 31, 34 (D.D C. 2009), the court found the $75,000 amount in controversy requirement was met based on a punitive damages ratio of 6.5 to 1, stating the court could not say that "a ratio of 6.5 to 1 between Plaintiff's punitive and compensatory damages violates Defendants' due process rights." In *O'Brien v. Islamic Republic of Iran*, 853 F. Supp. 2d 44, 49 (D.D.C. 2012), the court awarded punitive damages at a ratio of 3.44 to 1, with $10,050,000 in compensatory damages and $34,572,000 in punitive damages, for a total award of $44,622,000.

20. Here, Plaintiffs seek both punitive and treble damages, and the statute they cite allows for both punitive and treble damages, as well as attorneys' fees. D.C. Code Ann. § 28-

3905(k)(2). *See also Jackson v. Byrd,* No. CIV.A. 01-CA-825, 2004 WL 3249693, at *2 (D.C. Super. Ct. June 30, 2004), *aff'd*, 902 A.2d 778 (D.C. 2006) (citing statute and noting that "treble and punitive damages are both available under the CPPA."). In *Jackson,* for instance, the court trebled the plaintiff's damages pursuant to this statute. *Id.* at *1 ("the Court will treble Plaintiff's damages. The calculation for treble damages is $444,526.23 (which is three times $148,175.41))." In addition to treble damages (which were offset based on a prior settlement), the court awarded $100,000 in punitive damages. *Id.* at *3.

21. Here, applying just a 3:1 punitive damages ratio would increase the amount in controversy well above the $75,000 threshold (*i.e.,* $25,000 in actual damages plus $75,000 in punitive damages would bring the amount in controversy to $100,000).

22. If treble damages were awarded, that would increase the amount in controversy to $75,000 (three times $25,000). That would mean the amount in controversy would exceed $75,000 even if a punitive damages award of 1:1 were awarded—*i.e.,* $25,000 in punitive damages plus $75,000 in treble damages would be $100,000.

23. While Plaintiffs' punitive and treble damages claims alone are sufficient to satisfy the amount in controversy requirement, Plaintiffs also seek attorneys' fees (s*ee, e.g.,* Compl., p. 9, WHEREFORE Clause), which would place the individual amount in controversy even further over $75,000. If attorneys' fees are available under the pleaded causes of action, which they are here, then attorneys' fees likewise are included in determining the jurisdictional amount. *See, e.g., Parker-Williams*, 53 F. Supp. 3d at 153 (attorneys' fees are counted towards establishing a jurisdictional amount where, as here, they are provided for by a statute in controversy). *See also Missouri State Life Ins. Co. v. Jones*, 290 U.S. 199, 202 (1933) (holding attorneys' fees should have been included in amount in controversy).

24.     For all the above reasons, then, it is clear that the jurisdictional minimum of $75,000 has been more than satisfied here, thus subjecting this case to removal under traditional diversity jurisdiction and supplemental jurisdiction principles.

## THE COURT ALSO HAS JURISDICTION UNDER CAFA

25.     This Court also has jurisdiction under CAFA, because this is a putative class action with more than 100 putative class members that are seeking to recover in excess of $5,000,000 in the aggregate, and there is minimal diversity of citizenship.

26.     CAFA reflects Congress's intent to have federal courts adjudicate substantial class action suits brought against out-of-state defendants, such as this case.  When CAFA was passed, it expanded federal jurisdiction over class actions by amending 28 U.S.C. § 1332 to confer upon federal courts original jurisdiction over cases where (a) the putative class contains at least 100 class members, (b) any member of the putative class is a citizen of a state different from that of any defendant; and (c) the amount in controversy exceeds $5,000,000 in the aggregate for the entire class, exclusive of interest and costs.  28 U.S.C. § 1332(d).

27.     This suit satisfies all of the requirements for federal jurisdiction under CAFA in that:  (1) the putative class exceeds 100; (2) at least one member of the proposed class has a different citizenship from Defendants; (3) the amount in controversy exceeds $5,000,000; and (4) none of the exceptions to CAFA jurisdiction applies.

**The Putative Class Size Exceeds 100.**

28.     CAFA requires that the proposed class consist of at least 100 persons.  28 U.S.C. § 1332(d)(5).  That requirement is satisfied here.

29.     Here, Plaintiffs allege the putative class members "number in the hundreds, and perhaps in the thousands."  (Compl., ¶ 9.)

30. Thus, based on the Complaint allegations, there are plausibly over 100 class members here. This is sufficient to support removal. *See, e.g., Dart Cherokee Basin Operating Co., LLC v. Owens,* 135 S. Ct. 547, 550 (2014) (removal notice need only plausibly allege, not detail proof of, the amount in controversy); *Lavelle v. State Farm Mut. Auto. Ins. Co.*, 235 F. Supp. 3d 217, 220 (D.D.C. 2017) (same principle).

**There is Minimal Diversity Sufficient to Establish CAFA Jurisdiction.**

31. The second CAFA requirement is minimal diversity, which requires that at least one putative class member must be a citizen of a state different from one defendant. 28 U.S.C. § 1332(d)(2). Under CAFA, a corporation is a citizen of the state where it has its principal place of business as well as the state under the laws of which it is organized. 28 U.S.C. § 1332(d)(10).

32. Plaintiffs' Complaint indicates they are citizens of the District of Columbia. (Compl., p. 1.) Plaintiffs purport to represent a class that includes District of Columbia UM claimants. (Compl., ¶ 9.) As detailed above, Defendants are incorporated under the laws of Illinois with their principal places of business in Illinois, and are therefore citizens of Illinois for diversity purposes. 28 U.S.C. § 1332(c)(1). Accordingly, there is clearly minimal diversity here as at least one class member is a citizen of the District of Columbia and no Defendant is a citizen of the District of Columbia, so this prerequisite to CAFA jurisdiction is also met. 28 U.S.C. § 1332(d)(2).

**The CAFA Amount in Controversy Requirement of $5,000,000 is Satisfied.**

33. CAFA requires that the amount in controversy exceed $5,000,000 for the entire putative class in the aggregate, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2).

34. As the removing party, Defendant bears the burden of establishing the CAFA amount in controversy requirement is met by a preponderance of the evidence. *Bradford v. George Washington Univ.*, 249 F. Supp. 3d 325, 333 (D.D.C. 2017).

35. In meeting its burden on removal, a removing defendant need not submit detailed evidence with its removal notice, but need only show plausibly that removal jurisdiction exists. *Dart,* 135 S. Ct. at 554; *Lavelle*, 235 F. Supp. 3d at 220.

36. Here, based upon Plaintiffs' Complaint allegations and theories (which Defendants dispute, but which control for removal purposes), the $5,000,000 CAFA amount in controversy requirement is satisfied.

37. For example, in *Lavelle,* the plaintiffs brought a putative class action against the defendant automobile insurer in the District of Columbia Superior Court, alleging breach of contract, unlawful and deceptive trade practices in violation of the District of Columbia Consumer Protection Procedures Act, and breach of the implied covenant of good faith and fair dealing, arising out of the insurer's failure to pay them for diminished value of their damaged vehicles. The court found jurisdiction under CAFA existed, stating:

> Even assuming a class size of 778 claims, the lower figure cited by Dr. Wilner, *see* Def.'s Opp'n, Att. 3 (Wilner Decl.) ¶ 2, multiplied by $1,429 per claim as the average amount of damages recoverable, results in total compensatory damages of $1,111,762. An award of treble damages under the Consumer Protection Act would increase the amount of damages to $3,335,286. Assuming a 100% award of punitive damages, the final amount in controversy would increase to $6,670,572. Because the amount in controversy exceeds the $5 million threshold required by the Class Action Fairness Act, *see* 28 U.S.C. § 1332(d)(2), the Court concludes that the requirements for federal subject matter jurisdiction are satisfied. Accordingly, the Court will deny the plaintiffs' Motion for Remand.

235 F. Supp. 3d at 225.

38. In *Bradford*, the plaintiffs alleged they paid tuition for an online course as a result of defendant's fraudulent misrepresentations as to the course content. As here, the compensatory damages were approximately $4 million, and the plaintiffs also sought treble damages, punitive

damages and attorneys' fees. The court found CAFA's amount in controversy requirement was met, stating:

> [G]iven that these students paid over $4,000,000 for the online SSL course… and in light of the plaintiffs' request for treble and punitive damages and reasonable attorney's fees, *see* Compl. at 20, the Court concludes that the defendant has also established by a preponderance of the evidence that the amount in controversy exceeds the CAFA's $5,000,000 threshold, *see Hartigh v. Latin*, 485 F.2d 1068, 1071–72 (D.C. Cir. 1973) (stating that it "is clear that punitive damages should be considered" when calculating a jurisdictional amount-in-controversy (citing *Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 240, 64 S.Ct. 5, 88 L.Ed. 15 (1943)); *see also Frederico v. Home Depot*, 507 F.3d 188, 199 (3d Cir. 2007) (considering attorneys' fees in calculating the CAFA amount-in-controversy requirement); *McMullen*, 82 F.Supp.3d at 139 (using treble damages in determining whether the CAFA amount-in-controversy requirement is satisfied).

249 F. Supp. 3d at 334.

39. Here, Plaintiffs allege in their compensatory Count that the compensatory damages for the putative class are "expected to exceed FOUR MILLION DOLLARS ($4,000,000.00) on behalf of the class defined herein." (Compl., p. 6, WHEREFORE Clause.)

40. Using Plaintiffs' alleged $4,000,000 compensatory damage figure for the class, that amount trebled would be punitive damages of $12,000,000—well over the minimum CAFA amount in controversy requirement. If punitive damages at a mere 1-1 ratio were added, that would put the amount in controversy even further over $5,000,000.

41. And the addition of attorneys' fees, which, as noted above, would also be included in the amount in controversy here, would even further increase the amount in controversy above $5,000,000.

42. For all the foregoing reasons, it is evident based on the Complaint allegations that the $5,000,000 CAFA amount in controversy requirement is satisfied here.

**None of the CAFA Exceptions Applies.**

43. Plaintiff bears the burden of establishing any applicable exceptions to CAFA jurisdiction. *See, e.g., Doe v. Georgetown Synagogue-Kesher Israel Congregation*, 118 F. Supp. 3d 88, 92 (D.D.C. 2015). CAFA provides two mandatory exceptions and one discretionary exception to the application of federal jurisdiction. 28 U.S.C. § 1332(d)(3)-(4). None of these exceptions applies here. Each CAFA exception requires, as a starting point, an in-state defendant. 28 U.S.C. § 1332(d)(3)-(4) (requiring either "significant relief" to be sought from an in-state defendant (local controversy exception), or requiring the "primary defendant" to be an in-state one ("home state" and discretionary exceptions). Here, as set forth above, none of the named Defendants is a citizen of the District of Columbia.

## ALL OTHER REMOVAL REQUIREMENTS HAVE BEEN MET

44. Pursuant to 28 U.S.C. § 1446(a), Defendants attach hereto, as Exhibit A, all the state court process, pleadings and orders served upon them.

45. This Court is part of the district and division within which this action was filed. 28 U.S.C. § 1446(a).

46. Promptly after filing this Notice of Removal, Defendants shall cause a true and correct copy of the same to be filed with the Clerk of the Court for the Superior Court for the District of Columbia, pursuant to 28 U.S.C. § 1446(d), along with a Notice of Filing of Notice of Removal, a copy of which is attached hereto as Exhibit B.

WHEREFORE, for the reasons set forth above, Defendants request this Court assume full jurisdiction over this action as provided by law.

| | |
|---|---|
| Dated: September 16, 2019 | Respectfully submitted, |
| | /s/ Alanna Clair |
| | Alanna Clair, DC Bar No. 986460 |
| | Dentons US LLP |
| | 1900 K Street, N.W. |
| | Washington, D.C.  20006 |
| | Phone: (202) 496-7500 |
| | Fax: (202) 496-7756 |
| | alanna.clair@dentons.com |
| | |
| | *Counsel for Defendants* |

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 16, 2019, a true copy of the foregoing was served via U.S. Mail upon counsel for Plaintiffs:

Peter A. Chapin
Sacks & Chapin, P.C.
4720 Montgomery Lane #330
Bethesda, MD  20814

David E. Tompkins
Lewis & Tompkins, P.C.
4720 Montgomery Lane #330
Bethesda, MD  20814

Thomas Minton
Goldman & Minton, P.C.
3600 Clipper Mill Rd., Suite 201
Baltimore, MD  21211

      /s/ Alanna Clair
Alanna Clair, DC Bar No. 986460
Dentons US LLP
1900 K Street, N.W.
Washington, D.C.  20006
Phone: (202) 496-7500
Fax: (202) 496-7756
alanna.clair@dentons.com

*Counsel for Defendants*