UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRANKLIN SALVADOR, SR. ) | |
| ) | |
| and ) | |
| ) | |
| FRANKLIN SALVADOR, JR., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | Civil Case No. 19-2754 (RJL) |
| ALLSTATE PROPERTY AND ) | |
| CASUALTY INSURANCE COMPANY, ) | |
| ) | |
| ALLSTATE INSURANCE COMPANY, ) | |
| ) | |
| and ) | |
| ) | |
| ALLSTATE INDEMNITY COMPANY, ) | |
| ) | |
| Defendants. ) | |

FILED
NOV 3 0 2020
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

MEMORANDUM OPINION
(November 19, 2020) [Dkt. #8]

On August 13, 2019, plaintiffs Franklin Salvador Sr. and Franklin Salvador Jr. (collectively, "plaintiffs") brought suit on behalf of themselves and a putative class in the D.C. Superior Court against defendants Allstate Property and Casualty Insurance Company, Allstate Insurance Company, and Allstate Indemnity Company (collectively, "defendants"). *See* Compl. [Dkt. #1-1]. Plaintiffs allege that defendants failed to reasonably compensate plaintiff Franklin Salvador Jr. for his serious and multiple injuries under the uninsured motorist coverage in his Allstate insurance policy and failed to warn

consumers who purchased their insurance that Allstate would take actions aimed at denying or delaying their receipt of full uninsured motorist benefits. The defendants move to dismiss, contending that Count II of the complaint fails to state a claim; that plaintiffs' class action allegations should be stricken or dismissed; and that the entire Complaint should be dismissed against defendants Allstate Indemnity Company and Allstate Insurance Company. Upon consideration of the briefing, the relevant law, the entire record, and for the reasons stated below, defendants' motion is GRANTED.

## BACKGROUND

Under District of Columbia law, any motor vehicle liability insurance policy sold in the District of Columbia must include uninsured motorist coverage of at least $25,000 per person injured in an accident or $50,000 total for all persons injured in an accident. D.C. Code § 31-2406. The purpose of this uninsured motorist coverage is to protect an individual who is involved in a car accident with an at-fault individual who either lacks car insurance altogether or lacks insurance sufficient to cover to full cost of injuries for which the at-fault individual is responsible. *See* D.C. Code § 31-2401(a)(2)(D).

On August 15, 2016, plaintiff Franklin Salvador Jr. was a passenger in a vehicle driven by Javier Vivar. Compl. ¶¶ 6, 10. Plaintiffs allege that on that evening, Javier Vivar operated the vehicle in a negligent manner and caused a collision between his vehicle and a fire truck. Compl. ¶ 12. As a result of the collision, plaintiff Franklin Salvador Jr. sustained serious injuries to his chest and back. Compl. ¶ 13. At the time of the collision, Javier Vivar had inadequate automobile insurance to pay all the damages for injuries as a result of this collision, including plaintiff Franklin Salvador Jr.'s injuries. Compl. ¶ 15.

However, plaintiff Franklin Salvador Jr. was the beneficiary of an automobile policy issued by Allstate Property and Casualty Insurance Company to his father, plaintiff Franklin Salvador, Sr. Compl. ¶ 6. Plaintiffs therefore sought uninsured motorist benefits under their Allstate policy. Compl. ¶ 6. While Allstate accepted coverage of the accident, they denied plaintiffs the full benefits that they requested. Compl. ¶ 7.

Plaintiffs allege in Count I of their Complaint that defendants "failed and refused to reasonably compensate plaintiff for his serious and multiple injuries" under D.C. Code § 31-2406. Compl. ¶ 21. Plaintiffs also allege in Count II of their Complaint that defendants have failed to warn the purchasers of their insurance policies that "Allstate engages in a course of action designed to specifically deny and/or delay timely and full uninsured motorist benefits." Compl. ¶ 24. Plaintiffs allege that defendants failed to advise purchasers of their insurance policies, including plaintiffs, that their uninsured motorist claims "would be submitted to a computer, known as 'Colossus,' which would produce an evaluation of plaintiffs' claim to such a low value as to essentially required plaintiffs to face the vagaries of a jury trial" to obtain the full benefits. Compl. ¶ 28. Plaintiffs brought this case on behalf a putative class consisting of "[a]ll District of Columbia Allstate policyholders or their beneficiaries who: (1) since August 13, 2016; (2) made a claim for uninsured motorist benefits with Allstate which was not paid in full; and (3) that included a claim for bodily injury." Compl. ¶ 9.

On September 16, 2019, defendants removed this case to the U.S. District Court for the District of Columbia pursuant to 28 U.S.C. § 1332(a) and 28 U.S.C. §§ 1332(d), 1441(a) and (b), and 1453. *See* Notice of Removal [Dkt. #1]. On September 23, 2019,

defendants then moved to dismiss Count II of the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), moved to dismiss the Complaint against defendants Allstate Insurance Company and Allstate Indemnity Company, and moved to dismiss or strike plaintiffs' class action allegations. *See* Defs.' Mot. to Dismiss [Dkt. #8].

## LEGAL STANDARDS AND ANALYSIS

### I. Whether Count II of the Complaint Fails to State a Claim

In Count II, plaintiffs allege that defendants failed to advise plaintiffs and the putative class that, inter alia: (a) their claims would be submitted to a computer system known as "Colossus," which would result in underpayment of claims; (b) defendants would extend low offers and thus require plaintiffs and putative class members to engage in litigation of their claims; and (c) defendants would fail to engage in meaningful alternative dispute resolution. Compl. ¶¶ 27-32. Plaintiffs also allege that defendants have engaged in "misleading advertising campaigns" designed to encourage plaintiffs and others to purchase uninsured motorist coverage knowing they would unfairly discourage or delay prompt resolution of the claims. Compl. ¶¶ 24-26. Defendants move to dismiss plaintiffs' CPPA claim, asserting that plaintiffs fail to state a claim upon which relief could be granted.

Under Federal Rule of Civil Procedure 12(b)(6), a federal district court must dismiss a Complaint if it does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Courts must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiffs, but need not "accept inferences unsupported by facts or legal conclusions cast in the form of factual allegations." *See City of Harper Woods Emps.' Ret. Sys. v. Olver*, 589 F.3d 1292, 1298 (D.C. Cir. 2009).[1]

The District of Columbia's CPPA makes it a violation to either "misrepresent as to a material fact which has a tendency to mislead," or "fail to state a material fact if such failure tends to mislead." D.C.Code § 28–3904(e),(f). This prohibition applies "whether or not any consumer is in fact misled, deceived or damaged thereby[.]" *Id.* at § 28-3904(a). "A person bringing suit under these sections need not allege or prove intentional misrepresentation or failure to disclose to prevail on a claimed violation," but "must allege a material fact that tends to mislead." *Grayson v. AT & T Corp.*, 15 A.3d 219, 251 (D.C.2011) (internal quotation marks omitted). "[A] claim of an unfair trade practice [under the CPPA] is properly considered in terms of how the practice would be viewed and understood by a reasonable consumer." *Pearson v. Chung*, 961 A.2d 1067, 1075 (D.C. 2008).

I agree with defendants that Count II should be dismissed. First, the Complaint merely sets forth vague and conclusory allegations regarding defendants' claim handling

---

[1] It should be noted that some courts have declined to apply Rule 9(b)'s particularity requirement to CPPA claims. *See, e.g., McMullen v. Synchrony Bank*, 164 F. Supp. 3d 77, 91 (D.D.C. 2016). I need not address that question here, as Count II of the Complaint fails to state a claim under Rule 12(b)(6), and should thus be dismissed against all defendants, even assuming that plaintiffs should not be held to Rule 9(b)'s heightened pleading standard.

processes and policies which defendants supposedly failed to disclose. *See* Compl. ¶¶ 27-32. Under Section 28-3904(f), a plaintiff "must prove only that defendant failed to disclose a material fact," where the omission "had the *tendency* to mislead" *Beck v. Test Masters Educ. Serv's Inc.*, 994 F.Supp.2d 90, 96 (D.D.C. 2013) (emphasis in original). As in *Cannon v. Wells Fargo Bank, N.A.*, 926 F. Supp. 2d 152 (D.D.C. 2013), there are no allegations about how plaintiffs responded to these purported omissions or what they would have done absent the alleged omissions. The Complaint merely sets out conclusory allegations of certain purported deficiencies in defendants' claims handling processes, without factual allegations to support how such failures tend to mislead consumers. In the absence of any allegations as to how plaintiffs would have responded absent the purportedly misleading omissions, "there are no allegations in the Complaint that the alleged omissions were in fact misleading to anyone, much less a reasonable consumer." *Id.* at 174.

Second, several of plaintiffs' allegations reflect legal assessments masquerading as purportedly omitted facts. *See* Compl. ¶ 28 (alleging defendants failed to advise plaintiffs that computer generated evaluation of claims would be "such a low value as to essentially require plaintiffs to face the vagaries of a jury trial... or be forced to accept a settlement of their claim for a sum less than the value of their accumulated medical expenses"); Compl. ¶ 30 (alleging defendants failed to advise plaintiffs that pursuing claims over $10,000.00 would require "complete litigation ... requiring extensive pre-trial proceedings and eventually a jury trial); Compl; ¶ 31 (alleging defendants failed to advise plaintiffs that they would "fail[] to engage in any meaningful alternative dispute

6

resolution process as devised by the Court"); Compl. ¶ 32 (alleging defendants offer "low offers of settlement" and, if such offers are not accepted, adopt a "scorched earth litigation tactic"). Plaintiffs' several allegations that defendants' claims processes force plaintiffs and putative class members to litigate their claims constitute legal assessments about whether and when litigation is necessary—not facts. Legal assessments are insufficient to state a CPPA claim. *See Floyd v. Bank of Am. Corp.*, 70 A.3d 246, 255-56 (D.C. 2013); *Iqbal*, 556 U.S. at 678 (cautioning against acceptance of "a legal conclusion couched as a factual allegation" for the purpose of evaluating whether a complaint fails to state a claim). As such, I will grant defendants' motion to dismiss for failure to state a claim the portion of plaintiffs' CPPA claim alleging a violation of § 28–3904(f).

Finally, as to plaintiffs' "advertising campaign" allegations, plaintiffs merely allege that defendants "have engaged in misleading advertising campaigns designed to encourage plaintiffs, and others, to purchase automobile liability insurance in compliance with applicable District of Columbia Law, including required [uninsured motorist] provisions, knowing that in the event of the assertion of a claim, as was done herein, that defendants would unfairly make the process as onerous as possible in the apparent attempt to discourage plaintiffs and/or delay reasonably prompt resolution of a lawful claim for benefits." Compl. ¶ 26. These allegations, however, are as impermissibly vague and conclusory as plaintiffs' "omission" allegations. To state a claim under § 28-3904(e), "[a]ll that is required is 'an affirmative or implied misrepresentation' that 'a reasonable consumer' would deem misleading." *McMullen v. Synchrony* Bank, 164 F.Supp.3d 77, 94-95 (D.D.C. 2016) (quoting *Saucier v. Countrywide Home Loans*, 64

7

A.3d 428, 442–43 (D.C.2013)). The bar is low, but plaintiffs do not clear it. Plaintiffs plead no facts surrounding any "advertising campaign"—in fact, they identify no advertisements. Plaintiffs do not plead any factual allegations regarding the supposed advertising campaign, or how defendants' actual practices render such a campaign misleading. Instead, plaintiffs make conclusory allegations that amount to little more than "a bare recitation of the elements," without "the type of factual allegations that would render it plausible." *See Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 130 F.Supp.3d 236, 258 (D.D.C. 2015). I will therefore GRANT defendants' motion to dismiss for failure to state a claim the portion of plaintiffs' CPPA claim alleging a violation of § 28–3904(e).

## II.   Whether the Complaint Should Be Dismissed Against Allstate Indemnity Company and Allstate Insurance Company

Allstate Property and Casualty Insurance Company is the only defendant in this action to have actually issued the applicable insurance policy to plaintiffs. In a multi-defendant action or class action, the named plaintiffs must establish that they have been harmed by each of the defendants. *Dash v. FirstPlus Home Loan Owner Tr. 1996-2*, 248 F. Supp. 2d 489, 504 (M.D.N.C. 2003). Defendants move to dismiss defendants Allstate Indemnity Company and Allstate Insurance Company. Plaintiffs do not contest dismissal. I will therefore GRANT defendants' motion to dismiss the entire Complaint against defendants Allstate Indemnity Company and Allstate Insurance Company.

### III. Whether Plaintiffs' Class Action Allegations Should Be Dismissed or Stricken

In determining the propriety of a class action, the central question is whether the requirements of Federal Rule of Civil Procedure 23 are met. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Rule 23 requires a two-step analysis to determine whether class certification is appropriate. First, plaintiffs must satisfy all four requirements of Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

*See* Fed. R. Civ. P. 23(a). "Failure to adequately demonstrate any of the four is fatal to class certification." *Moore v. Napolitano*, 269 F.R.D. 21, 27 (D.D.C.2010). Next, the class must fall within one of the three categories of Rule 23(b). To satisfy Rule 23(b)(3), at issue here, the court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3).[2] There is, of course, no formula or bright-line test for determining whether common issues predominate over individual issues. Rather, predominance ultimately depends on the degree to which resolution of the

---

[2] Defendants argue that plaintiffs will be unable to satisfy the "predominance" requirement of Rule 23(b)(3), and plaintiffs do not raise any other Rule 23(b) categories as relevant.

9

common issues might advance the overall litigation. *See Sandusky Wellness Center, LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 468 (6th Cir. 2017). Courts have broad discretion in determining whether to permit a case to proceed as a class action, *see Hartman v. Duffey*, 19 F.3d 1459, 1471 (D.C. Cir.1994), and a defendant may move to strike class action allegations at any time, including at the pleadings stage. *See* LCvR 23.1(b); *see also Abdul-Baaqiy v. Fed. Nat'l Mortg. Ass'n*, 149 F. Supp. 3d 1, 10 (D.D.C. 2015).

District of Columbia law requires that "[e]ach insurer selling motor vehicle insurance in the District . . . shall include coverage for bodily injury or death" of at least $25,000 per person injured in an accident or $50,000 total for all persons injured in an accident "for the protection of persons insured . . . who are *legally entitled* to recover damages from owners or operators of uninsured motor vehicles." D.C. Code § 31-2406(f)(2) (emphasis added). As made clear in the statute, each claimant must be "legally entitled" to recover damages to be encompassed in this code section. To recover benefits pursuant to uninsured motorist coverage, "the insured must prove coverage under the contract." *Group Hospitalization, Inc. v. Foley*, 255 A.2d 499, 501 (D.C. 1969).

Plaintiffs purport to represent a class defined as "[a]ll District of Columbia Allstate policyholders or their beneficiaries who: (1) since August 13, 2016; (2) made a claim for uninsured motorist benefits with Allstate which was not paid in full; and (3) that included a claim for bodily injury." Compl. ¶ 9. Defendants argue that plaintiffs will not be able to satisfy their burden to show predominance with respect to both

10

putative class members' entitlement to uninsured motorist coverage (Count I) and plaintiffs' CPPA claim (Count II). I agree.

With respect to Count I, defendants argue that their potential liability to any individual putative class member would turn, primarily, on a highly individualized set of determinations: "[w]as the at-fault driver in fact uninsured? Did an uninsured driver cause the accident in which the putative class member was injured? Were the individual's injuries a result of the accident? Were the individual's injuries a justification for benefits higher than the insurer offered?" Defs. Mot. to Dismiss at 18. As to Count II, defendants argue that even more highly individualized questions that would have to be answered for each individual putative class member: "[w]as the individual exposed to any 'advertising campaign'? What communications occurred between Defendants and each putative class member? Was the individual's claim submitted to Colossus? If so, was the claim in fact underpaid? What type of offer for [uninsured motorist] coverage was extended to the individual? Was it, as Plaintiffs allege, a 'low ball' offer? Did the individual have to engage in litigation in connection with his or her UM claim? What, if any, alternative dispute resolution took place, and was it 'meaningful?' What information did Defendants provide the individual regarding Defendants' claim handling processes? Did Defendants advise the individual that his or her claim might be submitted to Colossus? Did the individual have a 'small claim?'" *Id.* at 24-25. Defendants' contention that these individualized issues of fact and law would necessarily predominate over any common questions not only makes sense practically, but legally as well.

Plaintiffs' class action allegations are fatally deficient because individualized issues will necessarily predominate. Broadly, as to Count I, any inquiry into the entitlement of putative class members to payouts pursuant to Allstate's uninsured motorist policy, or the sufficiency of such payouts, will necessarily require a fact finder to make individualized determinations on a number of issues as to each purported class member. *See Council for Responsible Nutrition v. Hartford Cas. Ins. Co.*, No. Civ. A. 06-1590, 2007 WL 2020093, at *4 (D.D.C. Jul. 12, 2007) ("The insured bears the burden of showing that the underlying complaint comes within the policy's grant of coverage"). Plaintiffs' proposed class includes *any* policyholder or beneficiary whose uninsured motorist claim involved bodily injury and was not "paid in full." This necessarily requires individualized inquiries into whether each putative class member was actually injured, defendants' liability, and appropriate damages. The prevalence of these individualized issues defeats class certification here. *See In re Rail Freight Fuel Surcharge Antitrust Litig.*, 934 F.3d 619, 624 (D.C. Cir. 2019).

As to Count II, plaintiffs' CPPA claim alleging misrepresentation, individualized issues will similarly predominate. Like in Count I, there can be no liability where Allstate did not, in fact, owe uninsured motorist benefits to any particular class member—an issue inherently individual to each putative class member. Moreover, plaintiffs make vague allegations about defendants' "advertising campaign," but point to no specific advertisement or public pronouncement by defendants that was seen by all putative class members. *See Egan v. Telomerase Activation Sciences, Inc.*, 8 N.Y.S.3d 175, 177 (1st Dep't 2015) (interpreting analogous New York class certification standard).

Even assuming that defendants have violated the CPPA as to each putative class member, class certification cannot succeed "in the absence of a uniform policy or practice that affects all class members." *DL v. District of Columbia*, 713 F.3d 120, 128 (D.C. Cir. 2013). Plaintiffs' Complaint alleges no common contentions, capable of classwide resolution, that "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Walmart v. Dukes*, 564 U.S. 338 (2011). Rather, as in Count I, "mini-trials" would be required to determine liability and damages as to each individual putative class member.

For both claims, significant issues of fact and law individual to each putative class member would essentially require "mini-trials" to establish liability and damages as to each individual claimant. In such a case, class certification is inappropriate. *See Does I through III v. District of Columbia*, Civ. A. No. 02-02398, 2006 WL 2864483 at *3 (D.D.C. 2006) (rejecting certification under Rule 23(b)(3) in part because when "computation of damages will require separate mini-trials, then the individualized damages determinations predominate over common issues and a class should not be certified.") (internal quotation and citation omitted). I therefore must GRANT defendants' motion to strike or dismiss class allegations.

## CONCLUSION

For all the foregoing reasons, defendants' motion to dismiss Count II for failure to state a claim, motion to dismiss the Complaint against defendants Allstate Indemnity Company and Allstate Insurance Company, and motion to strike the class action allegations are GRANTED. A separate Order consistent with this decision accompanies this Memorandum Opinion.

*[signature]*

RICHARD J. LEON
United States District Judge